Glenn Carrington
GOODRICH, Petitioner,

v.

Hal SMITH, Director, Central New York Psychiatric Center, Respondent.

No. 85–CV–397.

United States District Court,
N.D. New York.

Sept. 17, 1986.

Joel A. Brenner, East Northport, N.Y., for petitioner.

Robert Abrams, Atty. Gen. of N.Y., Albany, N.Y., Benjamin Jones Fitt, Asst. Atty. Gen., for respondent.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

The above matter comes to me following a Report and Recommendation by Magistrate Edward M. Conan, duly filed on the 24th day of June 1986. Following ten days from the service thereof, the Clerk has sent me the entire file including any objections submitted thereto.

## BACKGROUND

On November 14, 1980 petitioner, Glenn Carrington Goodrich, stabbed his father to death in his parents' home. Petitioner then forced his mother to accompany him to Albany, New York, where he released her. Petitioner has a long history of emotional problems and is a diagnosed paranoid schizophrenic. Based upon two psychiatric examinations, the defense psychiatrist indicated that he would support a plea of not guilty by reason of insanity. After the state court trial commenced and after a third examination, the psychiatrist no longer thought a plea of insanity was "supportable." The psychiatrist based that conclusion on the fact that after the third consultation it became clear to the psychiatrist that petitioner knew the nature and consequence of his conduct and that he knew such conduct was wrong.

After the defense psychiatrist changed his mind, petitioner pled guilty to reduced charges: one count of first degree manslaughter in violation of New York Penal Law § 125.20 and one count of second degree kidnapping in violation of § 135.20 of the Penal Law. Those offenses are both class B violent felonies. The sentencing guidelines for class B violent felonies are set forth in §§ 70.02(3)(a) and 70.02(4) of the Penal Law. Those sections provide:

3. Maximum term of sentence. The maximum term of an indeterminate sentence for a violent felony offense must be fixed by the court as follows:

(a) For a class B felony, the term must be at least six years and must not exceed twenty-five years; ...

4. Minimum period of imprisonment. The minimum period of imprisonment under an indeterminate sentence for a violent felony offense must be fixed by the court at one-third of the maximum term imposed and must be specified in the sentence; provided, however, that the

court may impose a minimum term which is between one-third the maximum and one-half the maximum term imposed when the sentence is for a conviction of a class B armed felony offense.

On May 6, 1981 petitioner was sentenced to concurrent indeterminate terms of 8⅓ years to 25 years. That conviction was affirmed without opinion by the Appellate Division Third Department and leave to appeal was denied by the Court of Appeals.

Petitioner next brought a state court proceeding to have his sentence set aside asserting that his attorney failed to effectively represent him at the sentencing. Petitioner based that assertion on the fact that later his attorney candidly admitted that he believed the statute mandated a sentence of 8⅓ years to 25 years for class B violent felonies, when, in fact, a proper reading of that statute indicates that terms of lesser duration are appropriate for class B violent felonies. Petitioner further alleged that because of that misimpression regarding the sentencing statute, his attorney failed to act as his advocate at sentencing, and that had his attorney done so, a lighter sentence might have been imposed. Petitioner does *not* challenge the validity of his guilty plea.

Petitioner's motion to set aside his sentence was denied. The Appellate Division Third Department denied petitioner's motion for leave to appeal. Thus, petitioner having exhausted his state remedies, commenced this federal habeas corpus proceeding on February 6, 1985, arguing denial of effective assistance of counsel.

## MAGISTRATE'S REPORT & RECOMMENDATION

The Magistrate recommended that the petition be denied and dismissed. In reaching that decision, the Magistrate applied the two-prong test for ineffective assistance of counsel adopted by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court stated:

[T]he defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process.

*Id.* at 687, 104 S.Ct. at 2064–65. The Magistrate concluded that petitioner had not met that test because although petitioner's attorney "may have been mistaken as to the possible range of sentences available, he continually requested the 'minimum' sentence for petitioner." Report-Recommendation at 2. The Magistrate was also persuaded by the fact that petitioner's attorney had prepared a pre-sentencing memorandum containing letters and reports regarding petitioner's character and strongly requesting leniency. Significantly, the Magistrate also stated that there was never any proof, or even an allegation, that the sentencing judge was under the same misconception as petitioner's attorney.

## OBJECTIONS

Petitioner objects to the Report and Recommendation on several grounds. First, petitioner asserts that the Magistrate failed to satisfy the first prong of the *Strickland* test because he failed to make a finding of "unprofessional error." Second, petitioner, asserts that the Magistrate erroneously applied the *Strickland* "prejudice" test to this non-capital sentencing. Third, petitioner asserts that regardless of the fact the Magistrate allegedly used an improper test, he erroneously found the petitioner did not show prejudice. These objections will be addressed seriatim.

■ The fact that the Magistrate did not make a specific finding of "unprofessional error" by petitioner's previous attorney is not the basis for a valid objection; nor is

there any need for this court to make such a finding, as petitioner requested. In *Strickland,* the Court expressly stated that in deciding an ineffective assistance of counsel claim, a court does not necessarily need to address both prongs of the test. In fact, the Court specifically stated:

> [A] court need not determine whether counsel's performance was deficient before examing the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.* Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697, 104 S.Ct. at 2069–70 (emphasis added). Thus, there is no merit to petitioner's objection that the Magistrate erred in failing to make a specific finding of "unprofessional error."

■ Next, relying upon somewhat puzzling dicta in *Strickland,* petitioner argues that the Magistrate erroneously applied the *Strickland* test to this non-capital sentencing. (*Strickland* involved a capital sentencing proceeding governed by state law.) In *Strickland* the Court noted that ordinary sentencings "may involve informal proceedings and standardless discretion in the sentencer," and thus, those sentences "may require a different approach to the definition of constitutionally effective counsel." *Id.* at 686, 104 S.Ct. at 2064. That language does not, however, seem to be an endorsement by the Supreme Court of a lesser standard than "reasonably competent assistance," the standard adopted by this Circuit. *See Trapnell v. United States,* 725 F.2d 149 (2d Cir.1983). Although the Supreme Court has not articulated what the standard should be in a non-capital sentencing, in a recent case the Second Circuit has indicated that *Strickland* should be applied even in non-capital sentencing proceedings. *See Janvier v.*

*United States,* 793 F.2d 449, 456˙ (2d Cir. 1986).

■ Further, there is instructive dicta in *Strickland* which a court can consider in a non-capital sentencing proceeding:

> A number of practical considerations are important for the application of the standards we have outlined. *Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules.* Although those principles should guide the process of decision, the *ultimate focus of inquiry must be on the fundamental fairness of the proceeding* whose result is being challenged. *In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable* because of a breakdown in the adversarial process that our system counts on to produce just results.

*Id.* 466 U.S. at 696, 104 S.Ct. at 2069 (emphasis added). Significantly, the Court further noted:

> To the extent that this has already been the guiding inquiry in the lower courts, the standards articulated today do not require reconsideration of ineffectiveness claims rejected under different standards.... In particular, the minor differences in the lower courts' precise formulations of the performance standard are insignificant: the different formulations are mere variations of the overarching reasonableness standard.

*Id.* at 696–97, 104 S.Ct. at 2069 (citation omitted). The language implies that proper inquiry is one of reasonableness, regardless of how that standard is articulated, and such a standard comports with the standard in this Circuit.

■ An inquiry into the fundamental fairness of the sentencing in the present case demonstrates that even under that arguably less stringent, and certainly more flexible reasonableness standard, the result was not unreliable. Despite not being

aware of the sentencing alternatives under the statute, in the pre-sentencing memorandum petitioner's attorney specifically requested the "minimum concurrent term of imprisonment under the Penal Law." Pre-Sentencing Memorandum at 3. Petitioner's previous attorney also argued for the court to impose "[T]he minimum sentence available in the court's sentencing alternatives...." Sentencing Hearing Transcript at 3–4 (May 6, 1981). Attached to that presentencing memorandum were letters regarding petitioner's character requesting leniency and treatment for petitioner during his incarceration. Psychiatric reports were also included in that memorandum. Therefore, as the Magistrate correctly noted, the sentencing judge was certainly aware of petitioner's mental state and any possible mitigating circumstances.

■ In light of the foregoing, although petitioner's attorney was not aware of the minimum sentence, it cannot be said that the result was unreliable. That is especially so considering that there is no indication that the sentencing judge was not fully aware of the range of sentences applicable to petitioner. Therefore, even if the Magistrate improperly applied the specific test formulated in *Strickland,* the conclusion would have been the same applying the more general standard of reasonableness. Thus, petitioner's objection on this issue is not persuasive.

■ Lastly, petitioner argues that the Magistrate erroneously found that the petitioner did not show prejudice as required by the *Strickland* test. In *Strickland,* the Court defined the appropriate test for prejudice as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.*

*Id.* at 694, 104 S.Ct. at 2068 (emphasis added). Applying that test to the present case, there is not a reasonable probability that the result of petitioner's sentencing would have been different. Petitioner's objections made reference to several arguments his previous attorney could have made for imposing a lesser sentence, which allegedly would have changed the result. First, petitioner states that the prior attorney could have advised the sentencing judge that petitioner's family wanted petitioner to receive the lowest possible sentence. The sentencing judge must have been aware of that fact, however, given the letter from petitioner's family members which accompanied the pre-sentencing memorandum. For example, his mother specifically requested that the judge "not make the length of his sentence any worse than it needs be—or any more than minimum," and then she went on to state her reasons for that request. Although the word leniency was not expressly used by the family members, that was certainly the thrust of their letter. The sentencing judge was made aware of that fact, and there is no reasonable probability that the outcome would have been different had petitioner's attorney specifically mentioned the family's sentiments during the hearing.

Petitioner also contends that his previous attorney should have informed the court that there was a great deal of sympathy and compassion for petitioner in his local community. Given the letters, including letters from family friends, former teachers, and a former treating physician, the judge was certainly aware of the sentiments of the community. Because petitioner cannot show that there is a reasonable probability that the outcome would have been different, his objection to the Magistrate's finding that petitioner did not show prejudice is clearly unwarranted.

Accordingly, after careful review of all of the papers herein, including the Magistrate's Report-Recommendation, and the petitioner's objections thereto, the respondent's reply, and the additional replies submitted thereto, it is hereby

ORDERED, that

1. The Report-Recommendation is hereby adopted.

2. The petition is dismissed.