Warren LANE, Petitioner,

v.

Eugene S. LeFEVRE, Superintendent, Clinton Correctional Facility, Respondent,

Sol Greenberg, Albany County District Attorney, Intervenor–Respondent.

No. 86–CV–445.

United States District Court, N.D. New York.

Feb. 1, 1989.

F. Stanton Ackerman, Ackerman, Wachs and Finton, P.C., Albany, N.Y., for petitioner.

Robert Abrams, Atty. Gen., State of N. Y. (John S. Sherman, Asst. Atty. Gen., of counsel), Albany, N.Y., for respondent Dept. of Law.

George H. Barber, Asst. Dist. Atty. (James R. Clark, Law Clerk, on the brief), Albany, N.Y., for intervenor-respondent Sol Greenberg, Albany County Dist. Atty.

## MEMORANDUM–DECISION AND ORDER

JAMES T. FOLEY, District Judge.

By a Report–Recommendation of fourteen (14) pages dated October 5, 1988, Magistrate Ralph W. Smith, Jr., of this District Court, recommended that the federal writ of habeas corpus sought in the petition of this state prisoner be granted, and the state indictment, upon which he was convicted in November, 1981, be dismissed unless a new trial is held upon two Counts of the indictment within sixty (60) days. The basic claim in the petition that was considered by the Magistrate, upheld and determined favorably for petitioner is that in violation of his federal constitutional rights under the Sixth Amendment he was denied effective assistance of counsel at the trial level.

The petitioner, Warren Lane, was convicted by a jury November 24, 1981 in Albany County Court upon two separate indictment counts filed September 1, 1981 of the crimes of Rape in the First Degree and Sodomy in the First Degree. The jury trial covered two days, November 23 and 24, 1981, and the judgment of conviction was entered November 29, 1981. Petitioner was sentenced by Albany County Judge John J. Clyne on January 7, 1982, as a predicate felon, to indeterminate terms of imprisonment having a maximum of twenty-five (25) years and a minimum of twelve and one half (12½), the separate sentences to run consecutively. The judgment of conviction was unanimously affirmed in a substantial memorandum of the Appellate Division, Third Department dated May 17, 1984. *People v. Lane,* 101 A.D.2d 925, 475 N.Y.S.2d 934 (3rd Dept.). By Order dated June 28, 1984, New York Court of Appeals Associate Judge Matthew J. Jasen granted leave to appeal to the Court of Appeals. The Court of Appeals unanimously affirmed the conviction in a brief memorandum opinion. *People v. Lane,* 64 N.Y.2d 1047, 489 N.Y.S.2d 704, 478 N.E.2d 1305 (1985).

Petitioner, while an inmate of Clinton Correctional Facility, filed pro se in this District Court in 1986 a petition for federal habeas corpus. An Answer, memorandum of law, and pertinent state records were filed in behalf of the Respondent by the Attorney General. After review of this submission, Magistrate Smith decided an evidentiary hearing before him was required and ordered such hearing. The Magistrate appointed Attorney F. Stanton Ackerman as counsel to represent the petitioner at such hearing. Attorney Ackerman, by assignment, had represented the petitioner-defendant in the State Appellate Courts.

An evidentiary hearing was held in Albany before the Magistrate on September 26, 29 and 30, 1988. The petitioner, Attorney Ackerman and Assistant Attorney General Sherman were present and participated in the hearing. Albany County Assistant District Attorney Barber was also present during the hearing, assisted in the production of certain records but did not enter a formal appearance for the District Attorney. After the Report–Recommendation of the Magistrate was filed and issued, I issued an Order to Show Cause at the request of Assistant District Attorney Barber why Sol Greenberg, the Albany County District Attorney should not be allowed to intervene as a party in the proceeding pursuant to Fed.R.Civ.P. 24(b). After hearing the attorneys, I granted the application to intervene on October 19, 1988. At that hearing it was decided by the attorneys and the Court that the interests of justice would be best served by having the tapes of the evidentiary hearing used by the Magistrate for his review and determination transcribed for my review. After such tran-

scription was furnished, there has been a substantial submission of briefing and additional records, the last being the Petitioner's Reply Brief filed by Attorney Ackerman on December 14, 1988.

There has also been submitted a substantial accumulation of state trial and appellate court records, briefs and appendices for the de novo review by me of the Magistrate's report, findings and serious recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Objections have been filed timely for the Respondent and Intervenor–Respondent to the Report–Recommendation. The evidentiary hearing transcript is now available for review and reference in three Volumes. After much consideration, I believe the most efficient manner in which to refer to this varied submission of documents and records, and to help others find their way, is to use the markings that were placed upon them at the evidentiary hearing before the Magistrate, and recorded with witness listing in the Clerk's minutes of the evidentiary hearing before the Magistrate [1].

 There is a threshold question to be discussed and decided concerning the exhaustion by the petitioner of available state remedies. An application for a federal writ of habeas corpus by a petitioner in custody pursuant to the judgment of a State Court shall not be granted unless it appears that the applicant has exhausted the remedies in the Courts of the State. 28 U.S.C. § 2254(b) and (c), *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Exhaustion of available state remedies requires presentation of the claim to the highest State Court from which the decision may be had. *Daye v. Attorney General*, 696 F.2d 186, 190 n. 3 (2d Cir. in banc 1982); *see also Klein v. Harris*, 667 F.2d 274, 282–284 (2d Cir.1981). An omission at the appellate level in the State Courts in the presentation of the federal claim may result in its forfeiture for a federal habeas corpus application. *Forman v. Smith*, 633 F.2d 634, 638–40 (2d Cir.1980), cert. denied 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981); *Towndrow v. Henderson*, 692 F.2d 262 (2d Cir. 1982). In order to obtain review of a procedurally defaulted claim, a federal habeas petitioner must show cause for the procedural default and prejudice attributable thereto. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Murray v. Carrier*, 477 U.S. 478, 488–489, 106 S.Ct. 2639, 2645–2646, 91 L.Ed.2d 397 (1986).

These rulings are important in their application to the requirement of exhaustion in this habeas proceeding. In his Report–Recommendation (p. 2) Magistrate Smith flatly states: "Petitioner has exhausted his state remedies, 28 U.S.C. § 2254(d)". The Magistrate relied upon the Answer to the petition herein filed by the Attorney General for the Respondent on July 30, 1986 stating: "First: Petitioner has exhausted his state remedies". Even with these statements, it seemed strange to me that the New York Court of Appeals never mentioned in its opinion the issue of ineffective assistance of counsel, nor was the issue set forth in the Summary preface. *People v. Lane*, 64 N.Y.2d 1047–1049, 489 N.Y.S.2d 704, 478 N.E.2d 1305 (1985). I raised the question of exhaustion with the attorneys at the hearing on the intervention motion. The unusual response stated by Attorney Ackerman and Assistant District Attorney Barber was that at the oral argument for Leave to Appeal to the New York Court of Appeals, Judge Jasen *either suggested* or *directed* that the issue of ineffective assist-

---

1. Pet. Exs. 1–15, among others consisting of Albany County Jail Records, Sworn witness statements taken in 1981, transcript of Albany County Grand Jury minutes, omnibus motion filed by Attorney Paul T. Devane; Court. Ex. A. Transcript of Albany County Court Suppression hearing, County Court Trial, Vols. III and IV, Persistent Felony Hearing; Resp. Exs. A(1) Appellant Brief and Appendix, N.Y. Court of Appeals; B. Record on Appeal, App.Div. 3rd Dept, Vol VI; C. Special Information charging Persistent Offense; D. Pro Se Notice of Motion by Petitioner Lane in App.Div. 3rd Dept. to relieve Attorney Ackerman as assigned counsel on the appeal; also an Intervenor–Respondent Appendix (IRA), and a NYSIIS Report concerning petitioner, stipulated into evidence at the evidentiary hearing (Vol. II, p. 314).

ance of counsel not be presented or briefed to the Court. I requested that letters be furnished and filed with the Court in regard to their recollection in that regard. Letters have been received and filed from Attorney Lisa Oppedisano, associated with Attorney Ackerman, who argued also for permission to appeal, and from Attorney Ackerman and Assistant District Attorney Barber. Assistant District Attorney Barber's letter states that after Judge Jasen granted Leave to Appeal he stated in the *form of a suggestion* that the question of ineffective assistance of counsel not be brought to the attention of the whole court. The letter of Attorney Ackerman states that Judge Jasen told he and Lisa Oppedisano that *he would suggest* that the issue of ineffective counsel not be addressed in the brief. Attorney Lisa Oppedisano's letter characterizes the statements of Judge Jasen *as an admonishment* that could not be disregarded. In her letter to me, Attorney Oppedisano writes that she tried to circumvent this admonishment by inserting Point II in the Court of Appeals brief. Point II states: "The Trial Court abused its direction[sic] in refusing to grant Appellant's application for a change in Appellant's counsel". Resp.Ex. A(1), p. 15. This attempt, in my judgment, had little chance of success because the Appellate Division in its memorandum ruled specifically and separately from the ineffective counsel issue that this point had no substance. 101 A.D.2d at 926–27, 475 N.Y.S.2d 934.

With this background, substantial questions arise as to the complete exhaustion as required of all available State Court appellate remedies. The Assistant Attorney General now, and the Assistant District Attorney as a new party, specifically object to the Report–Recommendation on the ground that available state remedies are not completely exhausted. The questions create close problems. Was there a voluntary and deliberate omission of the ineffective counsel claim in the New York Court of Appeals that would bar and forfeit its presentation in the federal habeas corpus petition herein? Was there a waiver of the failure to exhaust by the statement in the Answer of the Attorney General to the

petition that state remedies had been exhausted? Was the statement of Judge Jasen, an eminent jurist, merely a suggestion and that is my concept of it, one that possibly could be viewed as sufficient denial to constitute adequate exhaustion of the ineffective assistance of counsel claim? It should be pointed out, of course, that there are no restrictions in the Order granting Leave to Appeal to the Court of Appeals signed by Judge Jasen on June 28, 1984. Resp.Ex. A(1), p. 60. There is broad authority for the Court of Appeals to consider and determine all questions of law, and the Court has ruled specifically that violation of defendant's right to counsel and a fair trial may be raised for the first time in that Court. *See People v. Bennett*, 29 N.Y.2d 462, 329 N.Y.S.2d 801, 280 N.E.2d 637 (1972). Permission to appeal to the Appellate Division, Third Department from the denial of Lane's pro se motion, based solely upon the ground of ineffective counsel at the trial, to vacate the judgment of conviction was permitted by Order of Associate Justice Howard A. Levine dated January 12, 1983. Resp.Ex. B, pp. 1–5, 41. This pro se motion by Lane presented separately the issue of ineffective assistance of counsel. Justice Levine directed that it be heard with the direct appeal pursuant to the Notice of Appeal from the judgment of conviction that was filed by Attorney Devane.

■ Despite the close issue regarding exhaustion, in my judgment, there is good reason due to the prolonged history of the case with evidentiary hearings for three days before the Magistrate and sufficient support in the law to proceed in this instance to the merits of the ineffective assistance of counsel claim. The requirement to exhaust state remedies is not a jurisdictional limitation on the federal courts but is based upon a doctrine of comity between Courts. *Fay v. Noia*, 372 U.S. 391, 415–420, 83 S.Ct. 822, 836–39, 9 L.Ed.2d 837 (1963). In a very recent opinion, the Court of Appeals, Second Circuit stated that the rule requiring exhaustion is not ironclad, and the interest to speed the administration of justice and conserve judicial resources is a

discretionary consideration. *Sanders v. Sullivan & Abrams,* 863 F.2d 218, 220–22 (2d Cir.1988). The United States Supreme Court in a case in which the State had waived its exhaustion defense in a habeas corpus proceeding authorized an intermediate approach and exercise of discretion by federal courts of appeal in determining whether the administration of justice would be better served by reaching the merits. *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). In an application of *Granberry* the Court of Appeals, Second Circuit concluded that district courts must also exercise their discretion to determine what effect to give to a state's waiver of the exhaustion defense, and must not adopt a per se rule that in the case of nonexhaustion the petition must be dismissed. *Plunkett v. Johnson, Superintendent,* 828 F.2d 954, 956 (2d Cir.1987).

■■■ In a noted opinion, the United States Supreme Court, *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), discussed and set forth a new approach, standards and principles to be applied in these Constitutional challenges based upon ineffective assistance of counsel at the trial level. The majority opinion by Justice O'Connor is comprehensive but marked throughout by cautions. The proper standard is settled as that of reasonably effective assistance, but it is noted that a precise formula or checklist is not furnished for judicial evaluation of attorney performance. The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances, and the burden is upon the petitioner or defendant to show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S., at 687–688, 104 S.Ct., at 2064. Judicial scrutiny of counsel's performance must be highly deferential, dependence upon too much hindsight should be eliminated, and conduct of counsel should be evaluated from counsel's perspective at the time. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of defenses faced by defense counsel or the range of legitimate decisions regarding

how best to represent a criminal defendant. *Id.,* at 687–689, 104 S.Ct. at 2064–2065. In a later case, the *Strickland* standard is described as rigorous, the petitioner must prove both incompetence and prejudice, and although by no means insurmountable the standard is highly demanding. *Kimmelman v. Morrison,* 477 U.S. 365, 381–382, 106 S.Ct. 2574, 2586–2587, 91 L.Ed.2d 305 (1986).

■■■ The United States Court of Appeals, Second Circuit, previous to the *Strickland* ruling expressly made the standard for this Circuit the same one, "reasonably effective assistance". *Trapnell v. U.S.,* 725 F.2d 149, 151–155 (2d Cir.1983); cited in *Strickland* 466 U.S. at p. 683, 104 S.Ct. at p. 2062. Thereafter the Court of Appeals, Second Circuit analyzing *Strickland* ruled that to sustain a claim of defective assistance the petitioner or defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability of a different result in the proceeding but for the errors of counsel. *Mills v. Scully,* 826 F.2d 1192, 1197 (2d Cir.1987) (Miner, C.J.); *Maddox v. Lord,* 818 F.2d 1058, 1061 (2d Cir.1987). Both showings must be made to conclude that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland* 466 U.S. at 687, 104 S.Ct. at 2064.

Despite the presence of generalities, there is one definite and striking instruction in *Strickland,* at p. 697, 104 S.Ct. at p. 2069:

"Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffective-

ness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffective claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."

Chief Judge McCurn of this District Court gave particular attention and emphasis to this approach in *Goodrich v. Smith,* 643 F.Supp. 579, 582 (N.D.N.Y.1986).

■ Mindful of this recommended approach, after reading every portion of the substantial submission, particular attention was given to the transcript of the Albany County Court suppression hearing, of the actual trial to a jury, and the Grand Jury Proceedings. From this careful review of these significant transcripts, my impression and conviction is firm, contrary to the findings and conclusions of the able Magistrate, that the evidence produced at the trial is so strong, and in my judgment overwhelming, that the petitioner committed the charged crimes of Rape in the First Degree and Sodomy in the First Degree that any of the alleged deficiencies in representation by assigned Attorney Paul T. Devane, if accepted, would not have affected in any way or changed in any respect the guilty verdict returned against the petitioner. The testimony of the victim, relating the events of a violent and terror filled evening and night, is straight forward and stands undisputed. Court Ex. A, Vols. III & IV, pp. 14–99. Her testimony at the trial withstood vigorous and lengthy cross examination and was the same at the trial as that given before the Grand Jury. *Id.* at 37–97; Pet.Ex. 9, pp. 4–17.

Her testimony about her relationship of the one week acquaintance with petitioner, his ruse to gain entry to her apartment, his violent and life threatening conduct in raping and sodomizing her, is succinctly and graphically reviewed in the memorandum of the Appellate Division. *People v. Lane,* 101 A.D.2d 925, 926, 475 N.Y.S.2d 934. Other significant factors in her testimony of forcible compulsory rape and sodomy are that the petitioner left her apartment at 4:30 A.M. when the police arrived at the scene without being seen by or speaking to them. The victim, when petitioner left the apartment, immediately telephoned her friend, Cathy Burgin, who lived in the same apartment house to tell her she had been raped. Cathy Burgin came to the victim's apartment and found her crying hysterically. Court Ex. A, Vols. III & IV, pp. 115–122. Albany Police Officer Nunzio Cangemi testified that he came to the victim's apartment pursuant to a police dispatcher call about 5:00 A.M. and found the victim crying and emotionally upset. He testified that the victim's apartment was a mess with the appearance of being ransacked, and the bed sheets were blood stained. The victim directed him to the steak knife which she said the petitioner threatened her with and that she used to stab the petitioner. Her examination at the Albany Medical Center by Dr. Krushru Irani at 7:30 A.M., the morning of August 17, 1981, and her statements and physical injuries further support her testimony that she had been forcibly raped and sodomized. *Id.* at 100–115. Another friend in the apartment house, Mildred McWilliams, testified that she telephoned the victim, knocked on her apartment door and used the apartment buzzer during the evening of August 16, 1981, and got no response. Court Ex. A, Vols. III and IV, pp. 148–151. In my judgment, this is important testimony supporting the victim's testimony that she was held in the apartment against her will by the petitioner, and not allowed to respond.

■ In his Report–Recommendation Magistrate Smith made twelve (12) specific findings. As I read them, none specifically cover the prejudice component set forth in *Strickland.* The Magistrate, always knowledgeable in these matters, does state in his conclusion in the Report–Recommendation, p. 13, "the evidence against petitioner can *hardly* be said to be overwhelming resting as it does almost *solely* on the testimony of the victim." (emphasis added). I have listed above the other important facts that in my judgment lend further support to her testimony. In rape and

sodomy cases, it is a common situation for a victim's testimony to be the main source for criminal charges and prosecutions of this kind. The jury had to believe the testimony of the victim in order to convict petitioner on evidence that had to prove, as Judge Clyne instructed, the charges in the two indictment counts beyond a reasonable doubt. In challenges of this kind to a conviction the question is whether there is reasonable probability that, absent such errors, the fact finder would have had a reasonable doubt respecting guilt. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. Judge Clyne, with unmatchable judicial experience in criminal trials, in his decision of December 10, 1982, denying the pro se motion of petitioner pursuant to the Criminal Procedure Law 440.10 to vacate the conviction upon the ground of ineffective assistance of counsel stated: "the evidence of forcible compulsion in this case was simply overwhelming". Intervenor–Respondent Appendix(IRA), pp. 1–2. This finding was referred to and not criticized in the memorandum of the Appellate Division, Third Department. 101 A.D.2d at 926, 475 N.Y.S.2d 934. State Court findings made in the course of deciding an ineffective claim are entitled to the deference requirement of 28 U.S.C. § 2254(d). *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. I accord that deference.

 In his discussion and in several findings, Magistrate Smith points out other alleged deficiencies in the representation that I do not consider singly or together as of sufficient importance to render the jury verdict as unsupported and unreliable. A one page opening not expressing a defense theory in a criminal case is not unusual, and at times the opening is waived for strategic reasons. *See* Evid. Hearing, Vol. 3, pp. 427–429. An omnibus motion is mostly drafted from text and form books and is boiler plate in that sense. The one filed by Attorney Devane challenged the Grand Jury indictment, requested suppression of statements by Lane given to Albany Police Officer Chmielewski, exculpatory evidence from the District Attorney under the *Brady* authority, a Bill of Particulars, and a *Sandoval* Order. Pet. Ex. 12. The

motion accomplished important purposes in behalf of the petitioner. A Suppression hearing was held prior to the trial by Judge Clyne, and a *Sandoval* hearing during the trial. Court Ex. A, Suppression Hearing, October 30, 1981; Court Ex. A, Vols. III & IV, pp. 139–147. Concern in the Magistrate's Report is expressed about petitioner not being granted the opportunity to testify before the Grand Jury that returned the rape and sodomy charges. The specific procedures of the New York Criminal Procedure Law 190.50(5)(a) were not invoked. More important than that formality is the fact that it strains credulity to reason that testimony of this petitioner with his extensive criminal record shown by the NYSIIS Record would have resulted in different action by the Grand Jury. *See Saldana v. State of New York*, 850 F.2d 117 (2d Cir. 1988), cert. denied, —— U.S. ——, 109 S.Ct. 836, 102 L.Ed.2d 968 (1989).

 Whether cross examination of a witness is perfunctory, and properly so, depends on the strategic judgment made in the tensions of a criminal trial. Quick decision has to be made whether or not it is important enough to explore further, or even not ask any questions of a particular witness. As previously noted, Attorney Devane did cross examine the very important witness, the victim, thoroughly and persistently. I am not convinced that the question to witness Bill Barker was wrong and inculpatory as the Magistrate comments in his Report at p. 6. The damage to the petitioner's story about calling up for Barker's automobile was already done by the direct testimony of Barker at the trial, and the hope may have been by the cross examination for a qualification in favor of petitioner. In any event, a wrong question, or a series of them, in a criminal trial would seldom be considered as decisive elements of ineffective assistance. Attorney Devane did develop at the trial, by cross examination of Police Officer Chmielewski, the important defense the petitioner continuously insists upon that he knew the victim five to six weeks before August 16, 1981 instead of the one week she testified to. Court Ex. A, Vols. III & IV, p. 161. The

Persistent Felony Hearing described by the Magistrate, Report at pp. 6–7, is in my judgment another example of the petitioner's disruptive and belligerent attempts to control a Court proceeding. His personal challenges regardless of his attorney's presence were to official records. The Persistent Felony Hearing was terminated upon the motion of Attorney Devane. Court Ex. A, Persistent Felony Hearing, January 5, 1982, p. 24. The recklessness of petitioner's statements is demonstrated by his assertion at that hearing that the victim was a prostitute and dope peddler. *Id.*, at p. 22. The true background of the victim as a Senior at the State University of New York at Albany who graduated, and her lifestyle is set forth in the trial record and the evidentiary hearing. Court Ex. A, Vols. III & IV, p. 37; Evid.Hearing, pp. 422–423.

 The main contention of the petitioner stated first in his pro se 440.10 motion to the Appellate Division, Third Department dated August 26, 1982 was that he was denied effective representation due to the failure of Attorney Devane to interview witnesses provided to him by petitioner that were aware of, and willing to testify to the relationship that existed between the victim and him. Resp.Ex. B. Record on Appeal, App.Div., 3rd Dept., Vol VI, p. 14. The written Argument of petitioner elaborates:

> If the witnesses that were provided to defense counsel, by the defendant, were interviewed and allowed to testify the jury would have received evidence to the effect of the complainant and defendant together on a number of occasions, ie at restaurants, at the movies, at parties in which the complainant and the defendant held hands and kissed. *One witness was to testify from a personal knowledge that the complainant and the defendant not only spent the night together on a number of occasions at the complainant's home, but also spent the night together at the defendant's home. Id.* pp. 16–17, (emphasis added).

This undoubtedly would be important testimony to contradict the testimony of the victim. The Magistrate focused upon this contention to fault mainly the representation of Attorney Devane with the conclusion that this contrary evidence might have resulted in a different jury verdict than the one of guilt. Mag.Report–Rec., pp. 13–14.

From my review, there is nothing in the State records or the evidentiary hearing transcript to support these strong assertions. Not one of these alleged witnesses was named in the State submissions of petitioner. At the evidentiary hearing before the Magistrate, the petitioner and his wife, Mary Edmunds Lane, with whom he lived and whom he married after his conviction and sentence testified. Mary Edmunds Lane testified after seven years she remembered clearly the names on a list she said was given to her by petitioner for Attorney Devane to establish his relationship with the victim. It was her testimony that she gave this list not to Attorney Devane but to Attorney Flannery, who shared office space with Attorney Devane. Attorney Flannery was not subpoenaed as a witness at the evidentiary hearing. She testified also that she gave some names to Assistant District Attorney Paul Der Ohannesian, who prosecuted the case. Evid. Hearing, 54–59, 63. Her testimony is suspect because in a sworn statement she signed for the District Attorney investigators, as Mary Edmunds, on September 14, 1981, there is no mention of any of these names or any relationship, but only that she had seen the victim's name in petitioner's address book. Pet.Ex. 5. Her vital interest in a satisfactory outcome for her husband is evident and should be weighed heavily against her credibility. Assistant District Attorney Der Ohannesian testified that he never was aware of such witnesses and never was given a list of witnesses by Mary Edmunds Lane. Evid.Hearing, Vol. 3, pp. 423–424.

Warren Lane, the petitioner, testified before the Magistrate. Evid. Hearing, Vol. 2, pp. 251–326. He testified he gave Mary Edmunds Lane a list of witnesses when he was confined at the Albany County Jail to be given to Attorney Devane. *Id.* at 273–274. Attorney Devane after being given an opportunity to review the state trial

record to refresh his recollection, testified that at the end of the prosecution case in open court with Judge Clyne presiding without the jury, he asked petitioner for the record whether or not he intended to testify and petitioner answered he did not. Then Attorney Devane said he responded to the court that he had no witnesses in the presence of petitioner and that the defense rested. *Id.* at 206; Court Ex. A, Vols. III & IV, pp. 176–177. It is significant that this usually outspoken petitioner-defendant made no protest when there was no restriction upon doing so. Attorney Devane testified that petitioner Lane never gave him the names of any witnesses to any ongoing relationship and he never received a list of such witnesses from any source. Evid. Hearing, Vol. 2, p. 203. It was on cross examination at the evidentiary hearing by Assistant Attorney General Sherman that petitioner began to give the names of witnesses he said he had told Attorney Devane about to prove an intimate relationship. He gave a few names, several that he did not know their last names, and then impaired greatly the worth and credibility of several by stating they were involved in wrongdoing together and that would not give him knowledge of where they may live. Evid.Hearing, Vol. 2, pp. 288–290. Later, on recross, he testified that many of the people who may have been witnesses he did not know their home address and the only thing he could have possibly done was to send a letter to a street corner, or to a bar, or an after hours spot, where they would have to be found. Evid. Hearing, Vol. 2, pp. 317–318.

The fatal omission and defect in the evidence before the Magistrate to support faulty investigation of competent and material witnesses by Attorney Devane is that not one of the alleged witnesses was produced to testify before the Magistrate. There was not even an affidavit prepared or submitted for any of them. The only explanation for such failure is this glib and unpersuasive statement by his Attorney, Mr. Ackerman:

> xx in several of my letters to him and I sent copies to the Court, I had asked him about witnesses he wanted me to subpoe-

na for today and for the hearing. And in the first letter that I got from him, sir, he listed a fair amount of people that would have testified on his behalf and would have established a prior relationship between himself and [the victim]xx I then wrote back to Mr. Lane, your Honor, and I said to him, I said "Warren, instead of calling all these people in, which I'll do if you want me to, I said, would you permit me to try to see if I can work that testimony into your testimony and Mary Lane's testimony instead of calling six, seven or eight additional peoplexx" Evid. Hearing, Vol. 2, pp. 319–320.

There is a complete lack of competent evidence in the state and federal records submitted to support the main contention of failure to investigate on the part of Attorney Devane that would warrant federal habeas corpus relief on that ground. From my review, and from the notable omission of necessary proof, it is my judgment that the assertion of the petitioner that there were witnesses to support an ongoing relationship with the victim is the concoction and fabrication of a prison wise and criminally experienced mind. *See* NYSIIS Report on Petitioner Lane.

The information testified to by Mary Lane and the petitioner concerning the identification and location of these witnesses is sparse and uninformative. The F.B.I. would have great difficulty in locating several of them, and even if located, their testimony as described would be incompetent and irrelevant. The Appellate Division, Third Department in its memorandum described the contentions concerning such witnesses as wholly unsupported, contained only in the barest conclusory allegations, with failure to even demonstrate their existence. *People v. Lane,* 101 A.D.2d at 926, 475 N.Y.S.2d 934.

*Strickland v. Washington,* supra, 466 U.S. at p. 691, 104 S.Ct. at p. 2066 is definite about the obligation of an attorney to investigate in situations of the kind present here:

> "The reasonableness of counsel's actions may be determined or substantially

influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.xx In short, inquiring into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.xx"

Application of these principles fit the circumstances here and support a finding and conclusion that Attorney Devane was not ineffective in investigation of alleged witnesses as claimed by petitioner. Such investigation it is shown would be futile, and even if some witnesses of the kind described, had been allowed to testify, the guilty verdict would not have been changed. The petitioner received a fair trial before Judge Clyne, who afforded him every legal right, and gave an exemplary and balanced Charge to the jury. Court Ex. A, Vols. III & IV, pp. 217–237.

My conviction is firm that the overwhelming evidence of guilt on the part of the petitioner would overcome any ineffective representation assuming it did occur. However, in fairness to Attorney Devane, I set forth the evaluation of the State judges as to the representation:

> "Furthermore, it appears that defense counsel was active at arraignment, made timely and proper motions, and requested and competently conducted a suppression hearing. He also adequately participated in the trial by making opening and closing statements, by appropriate objections and cross examination of witnesses, and by requesting a proper jury charge. Having demonstrated a familiarity with the basic principles of criminal law and procedure, (*People v. Conway*, 97 A.D.2d

659, 660 [469 N.Y.S.2d 185] ), it cannot be said defendant was denied effective representation of counsel."

*People v. Lane*, 101 A.D.2d at 926, 475 N.Y.S.2d 934 (App.Div. 3rd Dept.1984).

Judge Clyne in the written decision on the petitioner's post conviction pro se motion concluded the petitioner (defendant) was not denied effective assistance of counsel. IRA, p. 2. Judge Clyne testified to the same effect in the hearing before the Magistrate. Evid. Hearing, Vol. 1, pp. 129, 135–138.

After careful review, for the reasons stated herein and as the statute provides, the findings, conclusions and recommendation of the Magistrate to issue a conditional writ of habeas corpus are rejected. 28 U.S.C. § 636(b)(1)(C). The petition in this proceeding for federal habeas corpus is denied and dismissed.

It is so Ordered.