William J. SEARS, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 92–CV–448.

United States District Court, N.D. New York.

April 16, 1992.

As Amended April 20, 1992.

Lysaght, Lysaght & Kramer, Lake Success, N.Y. (Elliot I. Susser, Joseph L. Decolator, of counsel), for petitioner.

Gary L. Sharpe, U.S. Atty., N.D.N.Y., Syracuse, N.Y. (Andrew T. Baxter, Grant C. Jaquith, of counsel), for respondent.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Before the court is a petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2255 (1988). Petitioner William J. Sears is currently incarcerated in Hollidaysburg, Pennsylvania, having served approximately two months of his eight month sentence after pleading guilty in this district to violating 18 U.S.C. § 1623 (1988) ("False declarations before grand jury or court"). Sears's petition is based upon his belief that he was convicted without effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. Sears is represented by new counsel in the instant proceeding.[1]

## I. BACKGROUND

In the early morning hours of December 16, 1987, New York State Troopers executed a search warrant at Wild Bill's Grocery & Deli ("Wild Bill's") on the St. Regis Mohawk Indian Reservation, which is located in this district near Massena, New York. At the time, petitioner Sears allegedly owned Wild Bill's. Pursuant to the warrant, the troopers searched for and found thirty gambling devices in a back room of Wild Bill's. The troopers seized the machines and left the premises. More than two and a half years later, on July 20, 1989, state troopers arrested Sears for using and/or possessing illegal gambling devices in violation of 15 U.S.C. § 1175 (1988). Eight days later, a federal grand jury impaneled in this district indicted Sears on the same charge.

Jury trial on Sears's indictment began in this district on November 17, 1989, before Circuit Judge Van Graafeiland (sitting by designation). During Sears's case-in-chief, his defense counsel called him to the stand and the following dialogue ensued:

Q (by defense counsel): Sir, I want to talk to you briefly about your personal. Do you have any military experience?

A (by Sears): Yes. I was in the United States Army for six years.

\* \* \* \* \* \*

Q: Did you serve any or did you have any overseas assignments?

A: Yes.

Q: Would you tell us where?

A: Southeast Asia, Vietnam.

\* \* \* \* \* \*

Q: During the course of the period of your military service, did you receive any declarations?

A: Yes, I did.

Q: Would you tell us what they were?

A: I received a combat infantry badge, two Vietnamese campaign ribbons, purple heart, two bronze stars and I refused a silver star.

\* \* \* \* \* \*

---

1. Pursuant to Local Rule 12, the court clerk assigned Sears's petition to Chief Judge McCurn, as Judge McCurn was the judge who presided over the underlying criminal case that resulted in Sears's present incarceration. On April 3, 1992, five days before actually filing this petition, Sears's current attorney contacted Judge McCurn's chambers and asked that the petition be considered on an expedited basis. After learning that Judge McCurn would be unable to accommodate his request, Sears's attorney requested that the case be temporarily assigned to another district judge who at least could grant preliminary relief.

In accordance with counsel's request, Judge McCurn reassigned the case to this court. After receiving Sears's petition, this court notified the United States Attorney for the Northern District of New York of the pendency of this matter, and requested that response papers be filed expeditiously. The United States Attorney has filed response papers in a timely fashion.

Q: When was the first time you were wounded, sir?

A: I was 19 years old. I can't remember the exact date. It was 1969.

Q: Were you wounded a second time?

A: In 1970. I didn't—the first one I didn't apply, the paperwork was never processed for the first one. The second one was processed.

Transcript (11/17/89), *United States v. Sears*, 89–CR–148, at 110–11. Sears subsequently denied that he ever possessed or controlled the illegal gambling devices in question. *Id.* at 132. After a three-day trial, the jury acquitted Sears of the illegal use and/or possession charge.

Sears's tribulations with the government did not end with his 1989 acquittal, however. This is because through his testimony concerning his military record, Sears weaved himself into a tangled web from which he could not escape. More particularly, the government thereafter learned that Sears's testimony concerning his military record, specifically with respect to his honors and injuries, was false. Sears has since admitted that he knowingly fabricated this testimony. *E.g.* Plea Agreement (9/20/91), *United States v. Sears*, No. 91–CR–227, at ¶ 2 (Sears "admits that he knew this testimony concerning his military service and awards were false …"). In fact, according to the government, Sears never set foot in Vietnam but, instead, "earn[ed] the dubious distinction of being court martialed on two occasions, based on seven offenses committed during his enlistment." Gov.Mem. (4/14/92) at 3 n. 1.

On July 31, 1991, another grand jury indicted Sears for having uttered a false declaration before a United States court in violation of 18 U.S.C. § 1623(a). Sears pled guilty to the one-count indictment on September 30, 1991. On November 27, 1991, Judge McCurn sentenced Sears to his present eight month prison term.

## II. DISCUSSION

### A. Standard for reviewing claim of ineffective assistance of counsel

As previewed above, the basis for Sears's petition is his belief that he was deprived of his Sixth Amendment right to effective assistance of counsel and that this unconstitutional deprivation resulted in his present incarceration. The court notes at the outset that Sears must satisfy a stringent burden in order to prevail on this "ineffective assistance" argument. The burden is demanding because Sears cannot prevail merely by showing that his counsel employed poor strategy or even that his counsel made a wrong decision. In order to prevail on his claim, Sears must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 & 689, 104 S.Ct. 2052, 2064 & 2065, 80 L.Ed.2d 674 (1984); *accord, Anwar v. United States*, 648 F.Supp. 820, 826 (N.D.N.Y.1986) (Munson, C.J.), *aff'd mem.*, 823 F.2d 544 (2d Cir.1987); *Goodrich v. Smith*, 643 F.Supp. 579, 581 (N.D.N.Y. 1986) (McCurn, J.). Moreover, in reviewing Sears's argument, the court must proceed with a "strong presumption" that his defense counsel's conduct fell within the broad spectrum of reasonableness. *E.g. Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Sears argues that he was deprived of effective assistance of counsel because a reasonably competent attorney would have recognized that the indictment charging him with perjury was facially defective. According to Sears, the indictment was defective because it lacked an indispensable element of perjury, *to wit* materiality. *See* 18 U.S.C. § 1623(a). While Sears concedes that much of his November, 1989 testimony concerning his military record was false *see supra*, he relies in part upon *United States v. Allen*, 892 F.2d 66 (10th Cir.1989), to demonstrate that his false testimony was not material to the issue before the court. In this regard, he argues that because the indictment failed to adequately allege materiality, it was facially defective and a reasonably competent attorney would have moved successfully for its dismissal.

Since he relies upon his counsel's failure to litigate the materiality issue as the basis

of his Sixth Amendment argument, Sears must preliminarily convince the court that his materiality argument is meritorious. *Cf. Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305 (1986) (counsel's failure to request suppression hearing); *United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990) (same). In other words, to establish that his counsel was truly ineffective, Sears must show a "reasonable probability" that the outcome of the underlying case would have been different but for his counsel's failure to pursue the materiality argument. *See Kimmelman,* 477 U.S. at 375, 106 S.Ct. at 2582–83; *Matos,* 905 F.2d at 32. For the reasons discussed below, this court finds that Sears's materiality argument is without merit. Therefore, Sears cannot rely upon his counsel's failure to litigate materiality as a basis for establishing ineffective assistance of counsel.

### B. The merits of Sears's materiality argument

 It is axiomatic that § 1623(a) governs only those situations in which a speaker, while under oath, "knowingly makes any false *material* declaration" to a United States court or grand jury. 18 U.S.C. § 1623(a) (emphasis added); *see, e.g., United States v. Novod,* 927 F.2d 726, 729 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991) (grand jury context); *United States v. Berardi,* 629 F.2d 723, 727–28 (2d Cir.), *cert. denied,* 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980) (same). Thus, a misrepresentation which is not material cannot form the basis for a perjury conviction. *E.g. Allen,* 892 F.2d at 67. The parties agree that "[t]he

test for materiality is whether the false statement has a natural tendency to influence or was capable of influencing the decision required to be made." *Allen,* 892 F.2d at 67 (citing *United States v. Girdner,* 773 F.2d 257, 259 (10th Cir.1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986)). The issue of whether a statement is "material" presents a question of law which the court must decide. *E.g. United States v. Moon,* 718 F.2d 1210, 1237 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984) (citation omitted).

 Contrary to Sears's contention, testimony in a trial need *not* bear directly on the elements of the offense charged in the indictment in order to be considered material. It is well settled that statements concerning collateral matters may be material as well. *E.g. United States v. Kiszewski,* 877 F.2d 210, 218 (2d Cir.1989) (citing *Berardi,* 629 F.2d at 728).[2] In fact, every Court of Appeals which has reviewed the issue has ruled that a witness's credibility is material to the fact-finder's consideration of a case. *See United States v. Sablosky,* 810 F.2d 167, 169 (8th Cir.), *cert. denied,* 484 U.S. 833, 108 S.Ct. 109, 98 L.Ed.2d 68 (1987); *United States v. Scivola,* 766 F.2d 37, 44 (1st Cir.1985); *see also United States v. Salinas,* 923 F.2d 339, 341 (5th Cir.1991); *United States v. Anderson,* 798 F.2d 919, 926 (7th Cir.1986).[3] The rationale behind this rule seems logical enough: because jurors weighing the evidence are instructed to consider each witness's credibility, statements which bolster or diminish credibility might affect the outcome of a case. The fact that credibility might affect the outcome of a case means that credibili-

---

**2.** Sears complains that cases such as *Kiszewski* are distinguishable because the misrepresentations in those cases were uttered before a grand jury, not a court. Pet.Reply Mem. (4/15/92) at 3. The lack of merit in Sears's distinction is readily apparent from the text of § 1623(a), which proscribes misrepresentations to a United States court *or* grand jury. In other words, the statement is equally perjurious if uttered before either tribunal. Thus, Sears's distinction is inconsequential.

**3.** Sears's attempts to distinguish these cases from the case at bar are unavailing. Sears

generally distinguishes the cases based upon the narrow factual scenario presented in each. Under Sears's analysis, the court could not rely upon a decision for authority unless the case is factually identical to the present.

The fact of the matter is that the authority cited by the government is much more analogous to the present case than that cited by Sears. At any rate, the court relies upon these decisions for their legal conclusions, which (for the reasons discussed herein) are directly applicable to the case at bar.

ty is material. *See, e.g. Scivola*, 766 F.2d at 44 (citing *United States v. Giarratano*, 622 F.2d 153, 156 (5th Cir.1980); *United States v. Allen*, 409 F.Supp. 562, 565 (E.D.Va.1975), *aff'd mem.*, 541 F.2d 278 (4th Cir.1976)). This chain of logic comports with the Second Circuit's instruction that "[m]ateriality is demonstrated if the question posed is such that a truthful response could potentially aid the inquiry or a false answer hinder it." *Moon*, 718 F.2d at 1237.[4]

Turning to the present case, it is clear that the misrepresentations that Sears uttered at his 1989 trial could have enhanced his credibility in the eyes of the jury. By testifying that he had received a combat infantry badge, two Vietnamese campaign ribbons, a purple heart, and two bronze stars, had refused a silver star, and had been wounded while fighting on behalf of citizens such as the jurors, Sears painted a self-portrait of valor and courage which surely could have enhanced his image in the minds of the jurors. When the jury listened to his subsequent testimony, in which he disavowed possession and/or use of the gambling devices in question, the jury certainly could have considered his earlier testimony concerning his exemplary military record in deciding how much weight to afford his version of the facts. To be sure, one is left to wonder why Sears would have offered his military fantasy in the first place if he had not believed that it would bolster his credibility in the eyes of the jury.[5]

■ The fact that Sears's testimony *could* have strengthened his credibility with the jury is enough to show that the testimony was material. This is because the government need not establish that Sears's testimony *actually* affected the jury. A statement's mere capacity to influence the trier of fact is enough to render the statement material, regardless of its actual effect. *E.g. Salinas*, 923 F.2d at 341. Since the government has shown that Sears's testimony concerning his military record could have influenced the trier of fact in its consideration of the merits, it has succeeded in establishing that the testimony was material for purposes of § 1623(a). *Cf. Allen*, 409 F.Supp. at 565 ("a statement is usually sufficient to support a charge of perjury if it is material to any proper matter of inquiry, or if it is intended or calculated to bolster the testimony of a witness on some material point, or support ... the credibility of a witness").

Not surprisingly, Sears has not cited a single case holding that a witness's credibility is immaterial to the issues presented to the trier of fact. To the contrary, Many of the cases cited by Sears actually support the government's position that a statement is material if it is capable of influencing the trier of fact on an issue legitimately before it. *See* Pet. Mem. (4/7/92) at 6 (citing, *e.g.*, *United States v. Girdner*, 773 F.2d 257 (10th Cir.1985), *cert. denied*, 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986); *United States v. Moore*, 613 F.2d 1029, 1038 (D.C.Cir.1979), *cert. denied*, 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980)). Moreover, the two cases upon which Sears most heavily relies—in which courts ruled that certain factual misrepresentations

---

4. The government insightfully points to *dicta* in the Supreme Court's decision in *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), as enlightening as well. In *Havens*, the Court noted that a criminal defendant who knowingly lies in response to impeachment questions on cross-examination "would unquestionably be subject to a perjury prosecution." 446 U.S. at 627, 100 S.Ct. at 1916 (citations omitted). Since impeachment questions are by definition directed at a witness's credibility, the Court's statement in this respect gives further support to the notion that misrepresentations which affect credibility are material and thus perjurious.

5. To that end, Sears's contention that his defense counsel was ineffective in that he should not have elicited this false information from Sears is preposterous. Sears cannot seriously expect to perpetrate a fraud upon the court and then blame his trial counsel for asking the questions; the questions, after all, were not false—only Sears's answers were. There is absolutely nothing in the record to suggest that Sears's defense counsel knew that Sears was lying on the stand. Moreover, it is difficult to imagine how Sears can argue that his counsel was ineffective at the gambling trial given the fact that the trial resulted in his acquittal.

were immaterial—are inapposite.[6] In both *United States v. Allen, supra,* 892 F.2d 66 and *United States v. Martinez,* 855 F.2d 621 (9th Cir.1988), the respective courts ruled that a criminal defendant who wrote a false name on a financial affidavit had not committed perjury when the affidavit was submitted for the sole purpose of determining whether the defendant was eligible to receive appointed counsel. Despite lying about their true identities, neither defendant was found to have committed perjury because their names did not affect their eligibility to receive appointed counsel. In other words, the courts in *Allen* and *Martinez* vacated the defendants' perjury convictions because the government failed to establish that the respective defendant's names were material to the issue of whether the defendant—regardless of his name—was indigent and thus qualified for assistance. *See Allen,* 892 F.2d at 67 ("the government failed to show that the determination of indigency would have been changed or otherwise affected by the use of the true name"); *Martinez,* 855 F.2d at 624–25 ("government utterly failed to show that the defendant's use of a [false] name ... was material to a hearing devoted solely to determining financial eligibility for appointment of counsel").

■ Unlike the use of fabricated names in *Allen* and *Martinez,* Sears's fabrication of his military record could have affected the outcome of his 1989 trial and as such it constituted a material misrepresentation. As discussed above, the jury here was required to weigh the credibility of all of the witnesses in order to determine who was telling the truth. In this regard, Sears's testimony concerning his impressive military record certainly could have swayed the jury toward acquitting him. Accord-

ingly, the court is compelled to find that Sears's statements concerning his military record were material to the determination of that case.

The net effect of the foregoing analysis is that Sears's defense counsel in the underlying perjury proceeding would not have prevailed on a motion to dismiss the perjury indictment based upon the materiality argument. Therefore, especially in light of Sears's concession that his statements were false, there is not a "reasonable probability" that the outcome of the perjury case would have been different had defense counsel litigated the materiality issue. *Cf. Kimmelman,* 477 U.S. at 375, 106 S.Ct. at 2582–83; *Matos,* 905 F.2d at 32. Furthermore, after reviewing the case, counsel could have reasonably opined that Sears was best served by accepting responsibility for the perjury (rather than knowingly enter his client into a losing battle), thereby earning a downward departure in the sentencing guidelines and perhaps more favorable treatment from the sentencing judge. Even if another lawyer would have pursued a different, more effective tack, this court has no basis to conclude that counsel's performance was so egregious that he was not an effective counsel within the meaning of the Sixth Amendment. *Cf. Strickland,* 466 U.S. at 687–89, 104 S.Ct. at 2064–65. Accordingly, Sears's argument that he was denied effective assistance of counsel is without merit, and his petition for a writ of habeas corpus based upon that contention is denied with prejudice.

## III. CONCLUSION

Petitioner has not convinced this court that he was denied effective assistance of counsel. Therefore, his application for a

---

**6.** A third case upon which Sears relies, *United States v. Holley,* 942 F.2d 916 (5th Cir.1991), is wholly inapposite and does not stand for the proposition asserted by Sears in his Memorandum of Law. In his memorandum, Sears states that the court in *Holley* "reversed defendant's conviction on a charge of perjury, on the grounds, *inter alia,* that the Government failed to adduce sufficient evidence of the materiality of the alleged perjury." Pet.Mem. (4/7/92) at 7. This statement is patently false. In fact, after

thoroughly examining the issue, the court in *Holley* held that the government had clearly established the materiality of the defendant's statement and rejected the materiality argument out of hand. *Holley,* 942 F.2d at 923–25 ("[w]e hold that the materiality of the statement is established"). The court ultimately vacated the conviction and remanded for further proceedings, but on grounds unrelated to materiality.

The court assumes that counsel's blatant misrepresentation of *Holley* was mere coincidence.

writ of habeas corpus brought pursuant to 28 U.S.C. § 2255 is denied with prejudice.

IT IS SO ORDERED.